WALKER, President of The Bank of Utica, *against* THE BANK OF THE STATE OF NEW-YORK.

Where the holder of a bill of exchange transmits it to his agent for presentment to the drawee, such agent has no right to receive anything short of an explicit and unequivocal acceptance, without giving notice to the holder, as in case of non-acceptance; and he will be liable for any loss the holder may sustain in consequence of his neglect so to do.

The rule which holds an agent to be bound by the terms of the contract, where he fails to bind his principal, is confined to cases where such failure arises from a want of authority *in fact* to make the contract.

Where, therefore, a draft drawn by the "Empire Mills" upon "E. C. H. Esq., New-York" was forwarded to a bank for presentment, and the drawee wrote across the face of the draft "Accepted: Empire Mills, by E. C. H., Treas.,"

Walker *against* The Bank of the State of New-York.

it was *Held*, that such acceptance bound neither the drawee nor the "Empire Mills;" and that the bank having omitted to protest the bill was liable to the holder, upon the insolvency of the drawer and indorsers, for the amount of the bill.

IN 1851, the Bank of Utica transmitted to the defendant, the Bank of the State of New-York, for collection, a bill of exchange for $5000, drawn by the Empire Mills, a manufacturing corporation, addressed to E. C. Hamilton, Esq., New-York, and payable to the order of Frederick Hollister, four months after date. The bill was endorsed by Hollister, the payee, and by two others, and discounted by the Bank of Utica for the benefit of the drawers. At the time it was forwarded to the defendant, it had several months to run. The defendant caused it to be presented to the drawer, Hamilton, for acceptance, who wrote across its face as follows:

" Accepted, payable
at Am. Ex. Bank.
Empire Mills,
by E. C. Hamilton, Treas."

The defendant treated this as an acceptance of the bill by the drawer, and omitted to protest it, or to give any notice to the drawer or endorsers, who were good at the time the bill was presented for acceptance, but all failed before the maturity of the bill.

This action was brought to recover the amount of the bill, on the ground that the Bank of the State of New-York had not performed its duty as the agent of the plaintiff, for its collection. The cause was tried at the Oneida circuit, in June, 1852, before Mr. Justice HARRIS and a jury. The plaintiff recovered the amount of the note and interest, and the court at general term affirmed the judgment. (13 *Barb.*, 636.)

*A. W. Clason, Jr.*, for the appellants.

*Ward Hunt* for the respondent.

SELDEN, J.   The following general principles applicable to this case are settled by repeated decision, viz., that where a bill of exchange, payable at a future time, is presented for acceptance, and acceptance is refused, notice must be immediately given to the drawer and endorsers, or they are discharged; that if due notice of non-acceptance is given, the holder may immediately proceed against the drawer and endorsers, without waiting for the maturity of the bill; that any agent, whether it be a bank or an individual, receiving a note or bill from the holder for collection, is responsible for any loss which the holder may sustain on account of any neglect in presenting it or in giving notice of its dishonor; that it is the duty of an agent who receives for collection a bill of exchange, payable at some future time, to use due diligence in presenting the same for acceptance, and if he fail to do so, or fail to give notice in case acceptance is refused, he will be liable.

In this case the Bank of the State of New-York received the bill in question, as the agent of the plaintiff, for collection, presented it for acceptance, and gave no notice of its non-acceptance.   It follows, therefore, from the principle to which I have referred, that the defendant is liable to the plaintiff for the amount of the bill, unless it was accepted by the drawee.   An acceptance of a bill of exchange must be in writing and signed by the acceptor. (1 R. S., 768, § 6.)   The only question in the case then is, whether what was written across the face of the bill by Hamilton, the drawee, amounted to an acceptance.   It is impossible to contend with any plausibility that the words written by Hamilton upon the bill purport to be an acceptance by him individually, or that they can be considered as affording any evidence that he intended to bind himself personally as acceptor.   On the contrary, they most explicitly repel any such conclusion.   The words written embrace two distinct things: first, the contract of acceptance, and secondly, the signature of the party who accepts.   That

signature is "Empire Mills, by E. C. Hamilton, Treas." This is the usual and most appropriate mode of executing a contract by an agent in the name of his principal, and entirely excludes the idea that it was intended as an execution by the agent in his own behalf. The defendant could have no apology for understanding it as a personal acceptance by Hamilton. But it is said that an agent who assumes to execute a contract in the name of another, binds, in all cases, either himself or his principal; that if the principal is not bound the agent is. This raises the only question in the case upon which it is possible to doubt. It is true there has been a series of cases in the courts of this state, where one person had assumed, without authority, to execute a contract in the name of another, in which it has been held that the person assuming to act as agent was himself personally bound by the terms of the contract, precisely as though he had executed it in his own name and for his own benefit. But before we can determine whether the principle of those cases applies to this, we must ascertain their nature and the grounds of the decisions made in them. It will be found upon examination that in every one of these cases it appeared that the agent had no authority *in fact* to use the name of his principal. There was, therefore, a species of deception practiced in each of those cases; because by assuming to execute as agent, he virtually represented that he had authority from his principal to do so. Upon such a state of facts the agent would be liable in some form of action wherever the common law prevails. In England and in some of the states of the Union he is held liable, not upon the contract itself, but in an action on the case for damages. But in this state, at an early period, the practice was adopted of holding the agent bound by the contract, in the same manner as though made in his own behalf. The mode in which this was made consistent with the general theory of contracts was, to strike out, or to regard as stricken out, all that portion

of the signature which the agent had written without
authority. This would of course leave the contract with
his own name subscribed to it as the contracting party.
The rule, therefore, was necessarily limited to written con-
tracts, and to those where the agent had subscribed his
own name as well as that of his principal. *Dusenbury* v.
*Ellis* (3 *John. Ca.*, 70) is one of the earliest cases in
which the rule was adopted. Dusenbury had executed a
note in this form: "For Peter Sharpe, Gabriel Dusenbury,
Attorney." It turned out that Dusenbury had no authority,
and a suit was brought against him in a justice's court upon
the note. The plaintiff recovered, and, upon *certiorari* to
the supreme court, the judgment was affirmed. The court
there say: "The only question then is whether Dusenbury
was not personally responsible as for his own note. On
this point we are of opinion that if a person *under pretence*
of authority from another executes a note in his name, he
is bound; and the name of the person for whom he assumed
to act *will be rejected* as surplusage. The party who accepts
of a note, under such a mistake or *imposition*, ought to have
the same remedy against the attorney *who imposes on him*, as
he would have had against the pretended principal if he
had been really bound." In *White* v. *Skinner* (13 *John.*,
307), which was a similar case, except that the contract
was under seal, PLATT, J., who delivered the opinion of
the court, says: "The defendant *represented* himself and
assumed to act as the agent of the directors of the manu-
facturing company. He is now sued in his private indi-
vidual capacity; and to exonerate himself he was bound to
aver and prove that he had authority to seal for his co-
directors." Again he says: "If it does not bind the directors,
for whom the defendant *represented* himself as agent, then
it is personally obligatory on the defendant alone."

These being the cases in which the doctrine in question
may be said to have originated, their exposition of the rule
may with propriety be assumed to be just; and they une-

quivocally show that misrepresentation and imposition lie at the foundation of the doctrine. It clearly does not extend to cases where there is no mistake, misrepresentation or deception as to any matter of fact, although for some legal reason the principal may not be bound. One party is presumed to know the law as well as the other, and each contracts at his peril as to the legal effect of what is done. It follows, therefore, that unless Hamilton used the name of the Empire Mills without authority *in fact* from the corporation, he cannot be held personally bound by the acceptance. The law will not presume this want of authority. Fraud or misrepresentation are always to be proved, and are never presumed. Hence no foundation is laid in this case for treating the acceptance as that of Hamilton individually. But I go farther. Were it expressly proved in this case on the part of the defendant that Hamilton acted without any authority whatever; I hold that the defendant would still be liable. Acting in its capacity as agent, the Bank of the State of New-York had no right to impose upon the plaintiff the burden of litigating with Hamilton the fact of his authority, or the risk of such litigation. The plaintiff was entitled to an explicit and unequivocal acceptance, or a refusal to accept, so that the bank might resort to its remedy against the drawer and endorsers; and the defendant had no right to receive anything short of such an acceptance without giving notice.

The judgment of the supreme court must therefore be affirmed.

GARDINER, Ch. J. The single question in this case is, was the draft mentioned in the pleadings duly accepted? It was drawn by the Empire Mills, a corporation in Oneida county, upon E. C. Hamilton, Esq., New-York. It was accepted by the Empire Mills, payable at the American Exchange Bank, by E. C. Hamilton, treasurer. It was

drawn upon an individual in New-York city; it was accepted by a corporation having its place of business in the country. The draft was intended in case of acceptance to give the holder the security of two distinct parties for the payment of the money therein mentioned, one as drawer and the other as acceptor. The holder by the course adopted obtained only the security of the Empire Mills, who, as we have seen, alone became the acceptor as well as the drawer of the bill of exchange. The notion that such an acceptance was according to the tenor of the bill, only proves that there is nothing which may not be made the subject of controversy. Indeed, in justice to the defendants, it ought to be said that they consider the proposition that an acceptance by the Empire Mills was an acceptance by E. C. Hamilton, Esq., as so palpably absurd that they ask us to reject the entire contract as it appears on the face of the bill, and retain merely the name of Hamilton as an acceptor on his own account. The only difficulty with this suggestion is, that we are called upon to make a contract for one who is not a party to the suit, and who has refused to make one for himself. E. C. Hamilton, when left to act for himself, has used the appropriate language to bind the Empire Mills, and exonerate himself from all personal responsibility. The defendants accepted of this obligation as satisfactory to them, whatever might be the result in reference to their principals. It seems to me that they have not the right, now, without proof of a want of authority on the part of the agent, to repudiate the contract actually made, still less to change it to one against the agent personally. The judgment should be affirmed.

DENIO and RUGGLES, Js., gave no opinion, the former having been counsel in the case.

All the other judges concurred.

Judgment affirmed.