Leach v. Hale.

---

## LEACH v. HALE, Receiver.

1. Banks: UNDER NATIONAL BANKING LAW: BAILMENTS. Where a bank organized under the federal banking law receives on deposit United States bonds of one class, under a promise or agreement to exchange them for those of another, it will not be regarded as a mere mandatary or bailee acting without compensation, but, on the contrary, held to the terms of the contract, and liable to the depositor for the value of the bonds on its refusal to deliver them.

2. —— BANKING POWERS. An undertaking or transaction of this character, on the part of the bank, is within the scope of its powers to do a general banking business, conferred by the act of congress authorizing the creation of these banks.

3. —— EVIDENCE: STAMPS. Though the receipt or certificate of the bank, showing such deposit, were not admissible for want of a stamp, the deposit and facts connected with it might be shown by evidence *aliunde*.

Leach v. Hale.

*Appeal from Lee Circuit Court.*

SATURDAY, JANUARY 28.

As a cause of action the petition avers that plaintiff deposited, in the First National Bank of Keokuk, $400 in 7:30 United States bonds, to be converted into 5:20 six per cent United States securities; that the bonds being worth a premium of ten per centum were of the value of $440; that plaintiff demanded the return of one or the other class of bonds of the receiver of the bank, which was refused, and that the conversion of United States bonds from one class into another was a part of the legal business of the bank from which it derived profit. A written receipt executed by the cashier of the bank is referred to and made a part of the petition.

An amended petition avers the receipt of the bonds under an agreement to convert them as aforesaid, the failure to do so or to deliver to the plaintiff either class of bonds, and a demand upon the receiver for the securities. This amended petition makes no reference to the receipt executed by the cashier for the bonds.

The answer denies the allegations of the petition, and that the bonds ever formed a part of the assets of the bank, or that the bank did ever appropriate or convert them to its own use.

The cause was submitted to the court without a jury, and upon a special finding of facts judgment was rendered for plaintiff. The facts found by the court, so far as they are necessary for a proper understanding of the points ruled, are as follows:

1. The First National Bank of Keokuk was an association under the laws of the United States, doing a general banking business at the date the bonds in question were received by it.

2. That about that time its cashier advertised in a newspaper, published in Keokuk, that it would convert 7:30 United States securities into bonds called 5:20's without charge.

3. That at that time it was the custom of banks at Keokuk to convert one class of United States bonds into another as a part of their general business.

4. That plaintiff left with the cashier of the bank, $400 in United States bonds, to be converted into bonds of another class.

5. That the cashier of the bank executed a receipt for said bonds, set out in plaintiff's petition.

6. That, while the bank advertised that it would convert United States securities without charge, it was in some form compensated therefor.

Defendant moved in arrest of judgment and for a new trial on the following grounds: 1. The petition does not state a cause of action. 2. The facts set out show a tort if any thing, and the cause of action set out in the petition is *ex contractu.* 3. The decision of the court is not sustained by the evidence and is contrary to law. 4. The facts found are not supported by the evidence. The motions were overruled, and judgment rendered for plaintiff. Defendant appeals.

*R. P. Lowe* for the appellant.

*W. B. Collins* for the appellee.

BECK, J. — I. We will notice the objections made by defendant's counsel in the order they are discussed in the printed argument. The first point presented for our consideration is this one: The transaction, which is the foundation of the action, amounts in law to a bailment and not to an indebtedness or promise to pay money. The petition claims recovery

*1. BANKS: under national banking law: bailments.*

as upon an indebtedness or promise to pay money; judgment therefore cannot be rendered thereon. In support of his views defendant's counsel argues that, from the evidence, it appears that plaintiff deposited certain bonds with the cashier of the bank to be exchanged for other bonds, and that this service was to be rendered by the bank without compensation. He concludes that the transaction is a bailment in the nature of a mandate. In considering this question we will look to the findings of the court to determine the nature of the transaction. The question whether the findings are supported by the evidence will be hereafter considered in passing upon the objections made to them by defendant. We will also concede that the transaction was within the scope of the bank's business, and that it had power to receive and convert the bonds of plaintiff. This is denied by defendant and a question raised thereon, which we will consider in its order.

The transaction, in the light we are now considering it, amounts to the deposit of certain securities with an undertaking to return those of a different class, and was within the scope of the general business of the bank. The court made no finding as to the fact whether the bank received, in this particular case, compensation, though it is found that generally for such business it was in some form compensated. As to the liability of the bank the transaction is governed by the same rules which would apply in the case of the deposit of money to be repaid in different currency, or the receipt by the institution of commercial paper for collection. Can it be claimed that the deposit of a draft in a bank, under a special agreement that it shall be collected and the proceeds paid in gold or United States securities, creates a bailment in the nature of a mandate? We are unable to see any distinction between a transaction of that kind and the one before us. If no agreement was made for the payment of compensation to the bank, or if it was agreed that none should be paid, in neither case is

its liability different from the case of deposits of money securities or commercial paper for purposes within the limits of its general business. Institutions of this kind in dealing in such property are compensated for their services by direct benefits to their business. It would startle the financial and commercial world to announce the rule contended for by defendant's counsel, that banks receiving securities from their customers for a purpose within the limits of their proper business, even without compensation, are liable only as mandatary?

In our opinion the bank's liability on account of the transaction, as it appears from the court's findings, is sufficiently set out in the petition, and judgment was correctly rendered thereon.

II. It is next claimed that the transaction in question is not within the range of banking business authorized by the 2. — banking powers. act of congress under which the institution exists. The act referred to confers upon national banks organized under its provisions authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money upon personal security; by obtaining, issuing and circulating notes according to the provisions of this act." It is argued that the business of receiving from the customers of the bank one class of United States bonds to be converted into another is not within the scope of the powers conferred by this act. We are not informed by the record as to the acts that were necessary to have been done by the bank in order to "convert" bonds of the government from one class to another. It may have been done by forwarding the bonds to be converted to the proper officer of the government, and receiving from him in return their equivalent in a different series; or it may have been

Leach v. Hale.

accomplished by their sale and the purchase of the kind desired. We think the bank, under the provisions of the act above cited, was clothed with authority to pursue either course in order to "convert" the bonds of its customers. It was authorized to receive deposits. It cannot be doubted that it might have received deposits of United States bonds, and certainly such deposits could have been received under a contract to return bonds of another class in their place. It was empowered to purchase and sell such bonds, and undoubtedly it was within the limits of its power to sell plaintiff's bonds when deposited with it, and buy others to be returned in their place. We are unable to see why these transactions may not have taken place with the proper officer of the government, the bank delivering to him one class of bonds and receiving in return another. It is the policy of the government to encourage the purchase and sale of its bonds and to facilitate transactions in them, for thereby their value will be enhanced and the credit of the government in a measure promoted. It is not probable that congress intended to impose restrictions upon the national banks, the most numerous class of financial agents in the country, which would operate to prohibit dealing in the securities of the government in a manner usual among bankers and banking institutions. The effect of such legislation, it is apparent, would tend to discourage transactions in these securities, and in a measure operate to lessen their value.

III. The receipt given by the cashier of the bank, it is claimed, is not sufficiently stamped and was therefore

3. ——evidence: improperly admitted in evidence. The record
stamp.          recites, that when offered in evidence objection was made to its admission on account of the want of a stamp; that it was received subject to the objection, which was to be afterward passed upon. No further mention is made in regard to the objection, nor is it stated what ruling was made thereon. Neither does it appear that the court

based its finding of the fact of the delivery of the bonds to the cashier of the bank upon the receipt. There was other evidence before the court competent to establish the transaction. Parol evidence is admissible for that purpose. The petition does not claim recovery upon the receipt; it is not set up as the foundation of the action, but is referred to as evidence of the fact of the delivery of the bonds and failure to return them by the bank. Admitting that the receipt is not competent, the facts it recites are sufficiently established by other evidence. Its admission, if it was considered as evidence, was therefore error without prejudice.

It may be conceded that the contract between the plaintiff and the bank is embodied in the receipt, yet, if it is void, that contract may be proved by parol evidence. *McAfferty* v. *Hale*, 24 Iowa, 356. Such evidence was properly admitted under the pleadings.

IV. It is finally objected that the findings of the court are contrary to the evidence. We have given the evidence careful consideration and are of the opinion that the conclusions of the court are well sustained.

The judgment of the circuit court is

Affirmed.