MATILDA YERKES, Respondent, v. THE NATIONAL BANK OF PORT JERVIS, Appellant.

A national bank has corporate power to enter into an agreement with a customer to exchange for him non-registered U. S. bonds for registered bonds ; and it is bound by an agreement to that effect made for a sufficient consideration by its cashier.

Defendant had in its hands certain U. S. bonds belonging to plaintiff; its cashier in the spring of 1869, for a sufficient consideration, agreed to exchange the same for registered bonds. This the bank neglected to do, and in November, 1869, the bonds were stolen. In an action to recover their value, *held*, that defendant was liable.

(Argued April 11, 1877; decided April 24, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover the value of certain United States bonds, which, as the complaint alleged, defendant agreed to exchange for registered bonds, but which agreement it failed to perform, and refused to deliver up the bonds on demand.

Plaintiff's evidence tended to show that she was a customer of and a depositor with defendant; that it had purchased for her from time to time U. S. bonds, which it retained, collecting the interest thereon as it fell due and crediting her with the same in her deposit account. That in the spring of 1869, defendant's cashier agreed with her, for a sufficient consideration, to exchange said bonds for registered bonds. This was not done, and in November, 1869, defendant's banking house was broken open and robbed by burglars, and the bonds in question were stolen.

The court charged in substance that defendant had the power to make the alleged contract, and if made for a sufficient consideration, that plaintiff was entitled to recover. To which defendant's counsel duly excepted.

*Lewis E. Carr*, for the appellant. The contract of defendant to exchange the bonds was one beyond the scope of its powers as a corporation. (2 Black. Com., 452; 2 Kent's Com., 558; Edwards on Bailments, 33, 34; Story on Bailments, § 2; Jones on Bailments, 117; *Foster* v. *Pettibone*, 7 N. Y., 433, 435; *Mallory* v. *Willis*, 4 id., 76, 85; *Boyce* v. *City of St. Louis*, 29 Barb., 650, 656; *Halsted* v. *Mayor etc., of N.*

*Y.*, 3 N. Y., 430, 433; *Head* v. *Prov. Ins. Co.*, 2 Cranch, 127; *Beaty* v. *Knowler*, 4 Pet., 152; *Perrine* v. *C. & D. Canal Co.*, 9 How., U. S., 172; *People* v. *Utica Ins. Co.*, 15 J. R., 358; *N. Y. F. Ins. Co.*, v. *Ely*, 2 Cow. 678, 709, 710; 2 R. S. [6th ed. ], 391, m. p., 600, § 3; U. S. R. S., 998, §5133; 999, § 5136, sub. 3, 7; *First Nat. Bk.* v. *Nat. Ex. Bk.*, 2 Otto, 122, 128; *First Nat. Bk.* v. *Ocean Nat. Bk.*, 60 N. Y., 278; *Bank for Savings* v. *Collector, etc.*, 3 Wal., 495; *Commercial Bk.* v. *Hughes*, 17 Wend., 94; *In re Franklin Bk.*, 1 Paige, 249; *Marsh* v. *Oneida Cent. Bk.*, 34 Barb., 220; *Marine Bk.* v. *Fulton Bk.*, 2 Wal., 252; *Bank of Republic* v. *Millard*, 10 id., 152; *Carroll* v. *Cone*, 40 Barb., 220; *Downes* v. *Phenix Bk.*, 6 Hill, 297; *Planter's Bk.* v. *Sharp*, 6 How. [U. S.], 301; *Wiley* v. *First Nat. Bk.*, 47 Vt., 546; *Third Nat. Bk.* v. *Boyd*, 1 L. & Eq., Rep., 218; *First Nat. Bk.* v. *Citizen's Bk.*, 1 Weekly Digest, 511; *Veazie Bk.* v. *Fenro*, 8 Wal., 533; *Bissell* v. *M. S., etc., R. R. Co.*, 22 N. Y., 286–288: *Pearce* v. *Mad., etc., R. R. Co.*, 21 How. [U. S.], 441; *Shawmut Bk.* v. *P. M. R. R. Co.*, 31 Vt., 491; *Safford* v. *Wyckoff*, 1 Hill, 11.) Defendant was not estopped from pleading its want of power as a defence. (*Gage* v. *Newmarket R. Co.*, 18 Q. B., 457; 14 E. L. & Eq., 57; A. & A. on Corp., § 256; *Bk. of Genesee* v. *Patchin Bk.*, 13 N. Y., 309; *Philadelphia etc. R. R. Co.* v. *Quigley*, 21 How. [U. S.], 202; *Buffet* v. *T. & B. R. R. Co.*, 40 N. Y., 168, 179; *Leavitt* v. *Palmer*, 3 id., 19; *Talmage* v. *Pell*, 7 id., 328; *McCullough* v. *Moss*, 5 Den., 567; *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 62, 71; *Van Leuven* v. *First Nat. Bk.*, 54 id., 671; *Caldwell* v. *Nat. M. V. Bk.*, 64 Barb., 333; *Leach* v. *Hale*, 7 Am. R., 112.) The contract was the individual contract of the cashier, and did not bind defendant. (60 N. Y., 278, 287; 13 id., 309; 19 id., 312; *L. & F. Ins. Co.* v. *Mech. F. Ins. Co.*, 7 Wend., 31; *Hoyt* v. *Thompson*, 5 N. Y., 320; *Bank of U. S.* v. *Dunn*, 6 Pet., 51; *U. S.* v. *City Bk.*, 21 How. [U. S.], 356; *Minor* v. *Mech. Bk.*, 1 Pet., 46, 72; *Wyman* v. *H. & A. Bk.*, 14 Mass., 58; *Salem Bk.* v. *Gloucester Bk.*, 17 id., 1,

29; *Foster* v. *Essex Bk.*, id., 479; *Adriance* v. *Roome*, 52 Barb., 399; *Claflin* v. *F. & C. Bk.*, 25 N. Y., 293; U. S. R. S., § 5136, sub. 5, 3706, 2 Cow., 678; 3 Wal., 495, 15 J. R., 357, 390; 17 Wend., 94, 1 Paige, 249; *Conklin* v. *Second Nat. Bk.*, 45 N. Y., 655; *Mont. Co. Bk.* v. *Albany City Bk.*, 7 id., 459; *Mer. Bk.* v. *State Bk.*, 10 Wal. 604; *Bank of Metropolis* v. *Jones*, 8 Pet. 12; 13 Am. R., 711; 72 Penn., 471, 17 Mass., 479.)

*D. D. McKoon*, for the respondent. The contract of defendant's cashier to exchange the bonds was binding upon it. (*Van Leuven* v. *First Nat. Bk.*, 54 *N. Y.*, 672; *F. & M. Bk.* v. *B. & D. Bk.*, 16 id., 125; 11 Paige, 635; Morse Banks and Banking, 77, 97.)

EARL, J.    There was competent evidence tending to prove that the defendant agreed with the plaintiff for a sufficient consideration to exchange her bonds then in its custody for registered bonds, and the judge presiding at the trial submitted this evidence to the jury, and charged them that if they found the agreement was made, the plaintiff was entitled to their verdict. Whether this charge was correct is the sole question for our consideration.

The counsel for the appellant argued with much ability that the defendant had no corporate power to make such an agreement, and that its cashier had no authority to bind it by such an agreement; but he failed to convince us of either position.

Business corporations have such powers as are expressly conferred upon them by their charters, and such other incidental powers not prohibited as are proper, usual and necessary for the conduct of their corporate business. The defendant was organized as a national bank under the banking act of congress. The general purpose of its organization was " for carrying on the business of banking." It had all the powers, except as prohibited by law, usually exercised by corporations engaged in such business, and

properly incident thereto. It was expressly authorized (U. S. R. S., § 5136), to exercise "all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security, and by obtaining, issuing and circulating notes." While the statute specifies the main things a national bank may do, it does not undertake to specify all, and it does not prohibit all not specified. There is a large branch of banking business not particularly specified — that of collecting notes, checks, bills of exchange and other evidences of debt, for other persons. This forms a large share of the business of nearly all banks. They have correspondents and business connections which enable them to reach all parts of the country, and they have facilities and arrangements which enable them to do it with economy and despatch. They take evidences of debt from their customers and other persons, and send them to distant places for collection, and pay over the proceeds when realized to the persons entitled, retaining or receiving in some form a compensation or benefit for the service. It has never been doubted that they have the right and power to do this kind of business as forming a legitimate part of banking business. If included under any specification contained in the statute, it is under that of "negotiating promissory notes, drafts, bills of exchange, and other evidences of debt." To negotiate means, among other things, "to transfer, to sell, to pass, to procure by mutual intercourse and agreement with another, to arrange for, to settle by dealing and management." (Webster's Dic.) This power is absolutely essential to the business of the country, and, if necessary to uphold it, it may be found in the specification alluded to. A bank in doing this business does not take title to the paper left with it for collection. It is a bailee for hire, and simply undertakes to use ordinary diligence in making the collection. It receives its compensation either by commissions charged or

incidental benefits received. But suppose a bank, instead of transmitting a note to be collected in money, transmits it for the purpose of procuring a renewal note or for the purpose of getting additional security, or for the purpose of exchanging it for other securities; would the business then be such as it had no power to transact? Can it be claimed that a bank may transmit evidences of debt to be paid in money, while it has no power to transmit them to be renewed, or secured, or exchanged? It certainly cannot be successfully. The power in each case is of the same kind, and must rest upon the same general basis.

In this case, if the plaintiff had delivered her bonds to the bank for collection, and the bank had agreed to collect them, no one would deny that the agreement would have been valid. If after such an agreement, the bank had kept the bonds for an unreasonable time, until they were stolen, or had lost them, or rendered them worthless by its culpable negligence, it would have become liable to the plaintiff for their value. (*Smedes* v. *Utica Bank*, 20 J. R., 372; S. C., 3 Cow., 662; *Bank of Utica* v. *McKinster*, 11 Wend., 473; *Walker* v. *Bank of the State of N. Y.*, 9 N. Y., 582; *Montgomery Co. Bank* v. *Albany City Bank*, 7 N. Y., 459.) Instead of agreeing to collect these bonds, the defendant agreed to send them to the secretary of the treasury, and exchange them for registered bonds (U. S. R. S., § 3706), and for reasons above stated it had the same power to do this as it would have had to collect them. The exchange of the bonds would in a broad sense have been a negotiation of them. It would, as commonly understood, have been a legitimate business for a bank to do. We may take judicial notice of the fact that government bonds are usually bought and sold through banks, and that all the transactions in reference to them with the government are usually conducted through banks and persons doing banking business. They are moneyed securities, and the collection or exchange of them is a financial transaction in no sense foreign to the business of banking.

Having thus reached the conclusion that the defendant had corporate power to make this agreement, it will not be denied that the cashier acting for the bank, and clothed with power to manage its ordinary business, bound the bank.

While I am not aware of any authority in conflict with the views above expressed, they are sanctioned by authority which we ought to respect. In the case of *Leach* v. *Hale* (31 Iowa, 69) there was a similar agreement by the cashier of a national bank for the conversion or exchange of bonds, and it was held that it was within the scope of the power of the bank to do a general banking business. In *Van Leuven* v. *The First National Bank* (54 N. Y., 671) it was held that a national bank can properly and legally engage in the business of dealing in and exchanging government securities. In that case the president of the bank agreed with the plaintiff to take his 7-30 notes and exchange them for 5-20 bonds. The notes were converted to his own use by the president, and the plaintiff sued the bank for their value. It defended upon two grounds, first, that the transaction was with the president individually, and not with the bank; second, that the bank was not authorized to make the agreement or do the business. A majority of the commissioners held that upon the undisputed evidence the agreement was made with the bank. Commissioners Reynolds and Johnson held that the evidence as to whether the agreement was with the bank or with its president individually, should have been submitted to the jury. But all the commissioners agreed that the bank had corporate power to make the agreement. The point that it had not was taken at the trial, argued before the commission, and considered and decided by it.

We therefore reach the conclusion, both upon principle and authority, that the defendant was bound, by the agreement found in this case, to exchange the bonds.

We have considered the exceptions to the rulings of the court upon objections to evidence, and find that none of them are well founded,

This case is distinguishable from the cases where bonds have been left with banks as special deposits, to be kept gratuitously for the owners. It is unnecessary to consider here what responsibility, if any, a bank incurs in such a case.

The judgment must therefore be affirmed with costs.

All concur, ANDREWS, FOLGER and RAPALLO, JJ., concurring in result.

Judgment affirmed.