Spear, J.
The question presented to this court i's only as to the sufficiency of the amended petition. It appears to have been the opinion of the court below, and is argued here by counsel for defendant in error, that the case made by the amended petition is one upon a contract undertaken to be made on behalf of certain named principals, by one undertaking to represent them and claiming to have authority to do so, whereas, in fact he had no such authority, and is, therefore, liable upon that agreement for a breach of it rather than upon the contract itself; also that there is presented, in the facts, a case of deceit based upon the alleged false representation as to authority and Hart’s belief in the same and his contracting and agreeing to pay the purchase money in reliance upon such representation as true; and that, in some way, not very clearly *83 stated, this construction of the pleading gives the plaintiff a favorable standing which he might not otherwise have.
Whether the conclusion which counsel seem to draw from their construction of the pleading is warranted or not, we think need not be discussed, for we are impressed that, applying the rule that the intent of the parties is to be gathered primarily from the form of the agreement and the mode of the signature, the contract set out in the pleading, and the additional facts pleaded, do not justify the conclusion that the contract was made, or was intended to be made, or understood to be one on the part of Raudabaugh as agent. It is true the statement is that Raudabaugh represented that he had authority from the other members of the partnership named, to sell, and undertook to sell the interests of the other partners in the property as well as his own. But it is nowhere averred that he undertook to sell for them or act for them in any manner. On the contrary, the averment is that the proposition was tendered to plaintiff by defendant; that in the proposition so tendered he “agreed to sell to plaintiff/7 etc., etc. Again: “said defendant further agreed to drill and complete one additional well/7 etc. Again: “said agreement between the plaintiff and the defendant contained a condition that defendant would sell said plants and property above set forth to plaintiff provided the deal was closed by October 1, 1894. Plaintiff further says that on the 26th day of September, 1894, he located the well as required by said contract and notified defendant in writing of such location/7 etc. In the absence of pertinent allegations to that effect it would seem like a strained construction to claim that the- contract was one of agency. To test the question, suppose this action *84 had been brought against the other partners to recover against them for Raudabaugh’,s dereliction (an averment that Raudabaugh had authority to sell their interests being substituted for the statement that he had not such authority), but without any .allegation that he was acting in making the sale, for them or in their behalf, how would the petition have stood against a general demurrer? Manifestly, the absence of any allegation that the contract had been undertaken to be made between Hart and such other persons would have been fatal to the pleading. One case relied upon to sustain this proposition of counsel is that of White v. Madison, 26 N. Y., 117. We think it wholly fails to support the contention. In that case Madison, who was a deputy sheriff, undertook to bind his principal, one Snow, the sheriff, by a promissory note signed, “N. D. Snow, Sh’ff, Chau. Co., by A. Z. Madison,, Dep. Sh’ff,” given to a mutual insurance company for a policy issued upon certain goods which the sheriff had seized in attachment. The note not being paid suit was brought against the sheriff which failed on the ground that Madison had no authority to bind his principal. Action was then commenced against Madison, who was held on the principle that one making a contract in behalf of another without authority is liable on the ground that he warrants his authority, and not that the contract is to be deemed his own, and the damages to which the professed agent subjects himself are measured, not by the contract, but by the injury resulting from his want of power, and involve, e. g. the costs of an unsuccessful action against the alleged principal to enforce the contract. A controlling feature of the above case, and one which conclusively differentiates it from the one at bar, is that the contract, on its face and *85 by its terms, plainly purports to be a contract with the principal. The same is true of the other cases cited to the same point, viz.: Walker v. Bank, 9 N. Y., 582; Weare v. Gove, 44 N. H., 196; Godwin v. Francis, 5 L. R. C., p. 295; Pauli v. Simes, 25 Eng. C. L. R., 573; and Simons v. Patchett, 7. El. & Bl., 568, cited by Professor Sutherland in volume 3 of his work on Damages, 1856. Nor is this conclusion in any way at variance with the holding of this court in Trust Co. v. Floyd, 47 Ohio St., 525, with which holding we are in entire accord. There, too, the party contracted as agent.
It follows, and it seems to us, naturally, that the contract is to be treated as one wholly between Raudabaugh and Hart, and that the allegation with respect to the former’s representation of authority to sell the interests of his partners in the leasehold property, can have no higher or other significance than as a representation that the seller had not the full title to the property, but could obtain it and would do so and convey the whole ownership to the purchaser on payment of the purchase money. Not having authority to sell the interests of his partners, may furnish a reason for non-compliance by Raudabaugh. The gist and gravamen of the damage to Hart, however, was not in the reason for not complying with his contract to convey a full title, but in the fact of not so. conveying. So long as the fact could be truthfully alleged, a reason for the existence of the fact was immaterial. That was the vital stipulation which, according to the pleading, Raudabaugh neglected to perform. Had he complied with that promise, his want of authority to sell the interests other than his own, as such, at the time of the contract or afterwards, would have been unimportant. He was at liberty to acquire the other *86 interests and complete his contract by a conveyance from himself only. In this respect the contract may be likened to the class known as optional contracts, a species of agreement very well understood in the trading world, where a party ventures to sell property which he is not then possessed of but expects to acquire.
With respect to the facts pleaded showing ground for an action of deceit, it may be sufficient to remark that the claim is of no possible consequence. If maintainable it would relieve the plaintiff of no burden as to performance on his part, nor entitle him to any higher measure of damage against the defendant. In any event, if entitled to recover at all, the measure of damages would be just what he prayed for, viz.: the difference between the contract price and the market value.
The contract pleaded was one that contained reciprocal and mutual obligations, and the. limit of performance, was, by the terms of the agreement, fixed for October 1, 1894. Time was thus made of the essence of the contract, as clearly stated in these words: “Said agreement between plaintiff and defendant contained a condition that defendant would sell said plants and property above set forth to plaintiff, provided the deal was closed by October 1, 1894.” Each party was thus duly apprised of the time within which the deal was to be concluded. What then was it necessary for either to do in order to put the other in default? With respect to such contracts, Hitchcock, J., in Courcier v. Graham, 1 Ohio, at page 842, observes: * . * * * “If one party was ready, and offered to perform his part, and the other neglected or refuse!: to perform his, he who was ready and offered, has fulfilled his engagement, and may maintain an action for the *87 default of the other, though it is not certain that either is obliged to do the first act.” And it would follow that neither party could, in such case, maintain any action upon the contract against the other without offering and proving performance, or a readiness and willingness to perform, and notice to the other party of such readiness and willingness. 1 Warville on Vendors, 366. Under the ancient rule a purchaser could not maintain an action for breach of contract without having tendered a conveyance and the purchase money. 1 Sugden on Vendors, 366. The later rule, and the one which has always prevailed in this State, is that in the absence of stipulations in the contract to the contrary, the conveyance is to be prepared and furnished by the vendor, but the ancient rule otherwise, it is believed, has always prevailed here, and is the law today. So long, therefore, as there is no tender of the deed on the one hand, nor of performance on the other, neither party is in default. Irvin v. Bleakley, 67 Pa. St., 28; Leaird v. Smith, 44 N. Y., 618. To entitle the vendee to demand a deed he must be ready and offer to comply with the contract on his part and show ability to perform it. Smoot v. Rea, 19 Md., 398. Whether or not it is necessary to have present and offer, in legal tender money, the exact sum due as is required in making tender upon an obligation for 1 re unconditional payment of money, except wh* re waived, it is at least necessary that the purchaser show readiness and ability to comply. Nor does the transaction imply haste, but deliberation, rather. As expressed by Woodworth, J., in Fuller v. Hubbard, 6 Cow., 13: “There is, then, something more to be done than the simple payment or the tender of the purchase money. A conveyance must be demanded. Nor would this alone appear to satisfy the principle *88 of the rule. A reasonable time should be allowed to the vendor to prepare the conveyance. The purchaser not having himself prepared it (which he may do), he shall not be allowed to retire immediately and bring his action, but should present himself to receive the conveyance, which he has thus required to be furnished. Deliberation and advice of counsel may be necessary in settling its terms. The framing and execution of modern conveyances, even with us, where the titles to real estate are much less complicated than in England, are not like the payment of money, or the delivery of a chattel.” The rule here announced is followed in a number of other cases in New York and elsewhere. Wells v. Smith, 2 Edwards’ Ch’y., 78; Bruce v. Tilson, 25 N. Y., 196; Fuller v. Williams, 7 Cow., 54; Connelly v. Pierce, 7 Wend., 129; Slocum v. Despard, 8 Wend., 619; Hartley v. James, 50 N. Y., 43; People v. Mills, 17 Cal., 276. The case of Smith v. Lewis, reported in 24 Conn., 624, and again in 26 Conn. 110, is authority for the proposition that “The word Tender,’ as used in connection with such a transaction, does not mean the same thing as when used with reference to the offer to pay money where it is absolutely due, but only a readiness and willingness to perform in case of the concurrent performance by the other party, with present ability to do so,, and notice to the other party of such readiness.” In Cutter v. Powell, 2 Smith’s L. C., 12, the rule is given thus: “Where two acts are to be done at the same time, as when A. covenants to convey an estate to B. on such a day, and in consideration thereof B. covenants to pay A. a sum of money on the same day, neither can maintain an action without averring a performance, or an offer to perform his own part, though it is not certain which of them is obliged to do the *89 first act; and this particularly applies to cases of sales.”
But there seems no doubt as to the rule in this State. In McCoy’s Adm’r v. Bixbee, 6 Ohio Rep., 310, it is held that “Covenants to convey a tract of land, specifying no time of conveyance, and a covenant to pay therefor so much money in hand and so much at a future day, are mutual covenants. In such a case a purchaser cannot have a cause of action, without averring the payment or tender of the purchase money.” And in Campbell v. Gittings, 19 Ohio, 347, it is held: “Where an article contains a covenant by one party to execute and deliver a warranty deed, and by the other to execute and deliver, when the deed is tendered, a bond and mortgage for the purchase money, though the party first named neglect or refuse to* deliver the deed, the other is not entitled to sue, after having neglected, at the proper time, to offer or tender a bond and mortgage; and a declaration on the covenant to make a deed containing an averment that the plaintiff offered to ^execute a bond and mortgage, without averring a tender,.or what is equivalent thereto, is bad on demurrer.” And in the opinion by Avery, J., it is said: “The covenants of these parties respecting the deed, and the mortgage to secure the purchase money, being both to be presented on the same day, are dependent covenants in which, according to a clear legal principle, performance cannot be exacted from either party, as a condition precedent. Both, it is understood, must perform at the same time, neither being under any obligation to trust the other.” * * * * “The case made, according to the decclaration before us, is this: The parties meet on the day when the acts required of each, in the article, are to be done; the defendant refuses to perform *90 on his part, and, therefore, the plaintiffs neither perform nor tender performance. The consequence to the defendant of his neglect and refusal, is, that he can maintain no action at law for the purchase money because he has neither delivered nor tendered a deed. Apply the same rules to both these dependent covenants, and the plaintiffs, who do not show themselves ready to perform by offering or tendering the bond and mortgage, cannot maintain this action for the deed. Great strictness is required of a party to a suit, who would avail himself of a tender or of an offer to perform.” Mowry v. Kirk, 19 Ohio St., 375, was an action to recover for non-delivery of certain railroad bonds purchased, in which a recovery was had in the trial court for the difference between the purchase price and the market value of the bonds. This judgment was reversed for error in the charge, and for that, upon the whole case, the judgment should have been for defendant. We quote from the opinion at page 383: “But the court below further told the jury, that when ‘the defendant denied the agreement, and refused to perform on his part, this dispensed with the necessity of a tender.’ In this we think there was error. I can find no authority to sustain the proposition given to the jury. In the interview between Kirk and Mowry, the next morning after the bargain was made, Kirk simply demanded the bonds. He did not offer to pay for them nor tender payment for them; nor does it even appear that he then had the money to pay for them. His right to demand and have possession of the bonds depended on his making or tendering payment, unless such payment or tei ,der was waived by Mowry. Though the property in the bonds passed by the bargain, the right of possession did not pass *91 without payment or its equivalent; and it seems to us that neither principle nor authority would authorize us to hold that the mere fact of a denial of the contract by the vendor alone amohnted to a waiver of a tender of the price of the bonds. The vendor might well say to himself, ‘I deny the contract to be as it is claimed to be; but if it be insisted on as claimed, I still have the right to insist on payment before delivery.’ And if, in a transaction of this kind, where prompt action was evidently contemplated by both parties, a week’s delay occurs in making either tender or payment, a rescission of the contract by the mutual consent of both parties may well be presumed in favor of either. Mutual delinquency gives rise to the presumption of mutual assent to a rescission. See Parsons on Contracts, 667, et seq., and Lewis v. White, 16 Ohio St., 454.” And in the syllabus it is held: “The mere facts that the vendor denied having made the contract and refused to deliver the bonds, did not imply a waiver by him of the vendee’s obligation promptly to tender payment. The delinquency of the vendee in failing to tender payment for a week after the contract was made, gave rise to the conclusive presumption, as against him, of his assent to a rescission of the contract, and authorized the vendor to act on that presumption.”
In the light of the rules thus ascertained, what is the attitude of the plaintiff below as shown by the petition? It is stated in the brief of defendant in error that the amended petition alleges “that plaintiff did all things on his part to be done :and performed under said contract.” 'Whether, if ;his were so, it would or not avail the plaintiff we need not consider, because the allegations of the pleading do not justify this claim. On the contrary, *92 the language is: “Plaintiff further says that from the 21st day of September, 1894, and until and including October 1, 1894, he was ready and willing to do and perform everything to be done by him in the carrying out of said' sale and contract, but the defendant, although often requested so to do, has refused to comply with said contract, and has at all times refused to transfer and deliver said property to plaintiff.” Of what consequence can this averment be so long as there was no attempt to apprise the adverse party of such readiness and willingness, no tender of performance on his part, in any way or manner? The fact of readiness to perform locked up in the breast of plaintiff could neither give information to defendant, nor entail on him any duty. It is, in law, as though the pleading were without any averment as to willingness and readiness to perform on the plaintiff’s part. Nor is this "fault aided by the allegation of demand of performance. The allegation of demand is at best vague and uncertain. It does not even purport to have been made on' or before October 1. It would not, we think, have availed had it so stated, for applying the doctrine of Mowry v. Kirk, supra, the defendant had the right to refuse to perform on his part so long as there was no effort at performance on the other side. To hold that a party so circumstanced may put the other party in the wrong by merely demanding of him that he make conveyance of the leasehold interests, would be to countenance a scheme smacking of mere bluff; it would be to give him an advantage over his adversary without any show of readiness or ability to perform on his part. We are aware that there is a holding in a sister state, that the demand implies that the demandant is himself ready and able to perform. For the reasons above stated, *93 and many others, we cannot assent to the proposition. Nor can it be said, reasonably, that the pleading shows that defendant had put it out of his power to convey. For aught that is alleged he could have acquired the title and could have completed the contract on his .part had the plaintiff come forward with the money or given notice that he was able and ready to perform. In the absence of such action on or prior to October 1, the defendant might well conclude, as in Mowry v. Kirk, that the contract had, by implied assent, been rescinded.
We are of opinion that the overruling of the demurrer to the amended petition was erroneous and that both judgments should be reversed. The cause will be remanded to the court of common pleas with directions to sustain the demurrer to the amended petition, and for further proceedings according to law.

Reversed.