CASE 12—ACTION BY NEWPORT NATIONAL BANK AGAINST NEWPORT
BOARD OF EDUCATION FOR BREACH OF CONTRACT FOR PURCHASE OF
BONDS.—OCTOBER 31.

# Newport National Bank v. Board of Education of Newport.

## APPEAL FROM CAMPBELL CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

NATIONAL BANKS—POWER TO PURCHASE CORPORATE BONDS.

Held:   Under the National Banking Act, Rev. St., U. S., section
5156 (Comp. St. U. S., 1901, p. 3455) giving national banks
all such incidental power as shall be necessary to carry on the
business of banking by "discounting and negotiating" promis-
sory notes, drafts, bills of exchange, and other evidences of
debt, a national bank has power to purchase bonds issued by
the board of education of a city.

L. J. CRAWFORD, ATTORNEY FOR APPELLANT.

The sole question arising on the demurrer, is whether or
not the contract set out in the petition is or is not *ultra
vires*.

The National Bank Act gives to a national bank the power
"to exercise by its board of directors, or duly authorized of-
ficers or agents, subject to law, all such incidental powers as
shall be necessary to carry on the business of banking; by
*discounting and negotiating* promissory notes, drafts, bills of
exchange and *other evidences of debt;* by receiving; by buy-
ing and selling exchange, coin bullion; by loaning money on
personal security; and by obtaining, issuing and circulating
notes according to the provisions of this title; but no association
shall transact any business except such as is incidental and
necessarily preliminary to its organization until it has been
authorized by the comptroller of the currency to commence the
business of banking."   Revised Statutes, U. S., section 5136.

It has been held that national banks have no right to pur-
chase *stocks* except to indemnify themselves against loss from
a previous loan, but stock in national banks or other corpora-
tions is neither a promissory note, draft, bill of exchange or
other evidence of debt, and is therefore not in the list of se-
curities in which a national bank may lawfully deal, but a

Newport National Bank v. Board of 'Education of Newport.

bond, whether national or municipal, is *an evidence of debt* (and we believe no authorities need be cited on this proposition) and is within the list of securities which a national bank may acquire by "discounting and negotiating."

In the case at bar, defendant was endeavoring to make a loan by depositing its bonds (which were evidences of debt) upon the best terms it could, and there is nothing to show that appellant bank has not a surplus to invest, or money to loan out in that manner.

We think the correct meaning of the word "negotiate," as used in the aforesaid act is, to transfer, sell, to pass, to procure by mutual intercourse and agreement with another, to arrange.

### AUTHORITIES CITED.

U. S. Rev. Statutes, sec. 5136; Leach v. Hale, 31 Iowa, 69; Yerkes v. Bank, 69 N. Y., 383; Anderson's Dictionary of Law, 1893, word negotiate.

JAMES C. WRIGHT AND WRIGHT & ANDERSON, FOR APPELLEE.

The appellee denies the right of appellant to go into the market and bid for and buy municipal bonds. It contends that power to do so is not given it by the national banking laws, and that all the acts set out by it in its petition whereby it attempted to acquire said bonds were and are *ultra vires* and void, and that the contract thus attempted to be made being wholly unexecuted, appellee can avail itself of this defense.

The appellant is a corporation created by statute, and whatever may have been the powers of corporations at common law, it is now well settled that statutory corporations must look alone to the statute of their creation for their powers.

### AUTHORITIES CITED.

1. The charter of a corporation is the measure of its powers, and the enumeration of those powers is the exclusion of all others.   Head & Armory v. The Providence Ins. Co., 2 Cranch, 127; Bank of U. S. v. Dandridge, 12 Wheaton, 64; Geo. W. Thomas, &c. v. West Jersey R. R. Co., 101 U. S., 71; Penn R. R. Co. v. St. Louis, &c. R. R. Co., 118 U. S., 91; Oregon Riv. Nav. Co. v. Oregonian Ry. Co., 130 U. S., 1; Cov. Gas Light Co. v. City of Cov., &c. 22 Ky. Law Rep., 801; Jessamine Co. v. Swigert's Admr.; Same v. Newcomb-Buchanan Co., 8 Ky. Law Rep., 692; Thweatt, &c. v. Bank of

Hopkinsville, 4 Ky. Law Rep., 557; Maddox, &c. v. Graham & Knox, 2 Met., 72 Ky.

2. Power of national banks to buy bonds in the market. Logan County Nat. Bank v. Townsend, 139 U. S., 67; California Nat. Bank v. Kennedy, &c., 167 U. S., 362; First Nat. Bank v. Exchange Bank, 92 U. S., 122; First Nat. Bank of Concord v. Hawkins,. 174 U. S., 364; First Nat. Bank v. Anderson, 172 U. S., 573; Talmadge v. Pell, 7 N. Y., 328; Weckler v. First Nat. Bank of Hagerstown, 42 Md., 518; Shinkle & Wife v. First Nat. Bank, 22 O. St., 516; First Nat. Bank v. Pierson, 24 Minn., 140; Farmers' & Mech. Bank v. Baldwin, 23 Minn., 198.

3. The right of appellee to plead and rely upon *ultra vires*, as a defense.    Cent. Transportation Co. v. Pullman Car Co., 139 U. S., 24; Thomas v. West Jersey R. R. Co., 101 U. S., 71; P. C. & St. L. R. R. Co. v. K. & H. Bridge Co., 131 U. S., 371; Ashbury R. R. Co. v. Richie, L. R. 7, H. L., 653; Nat. Home B. & L. A. v. Home Sav. Bank, 181, Ill., 25.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

In the month of February, 1900, the board of education of the city of Newport, being in debt in the sum of $27,200, decided to issue for the purpose of funding the debt its bonds of that amount, maturing at the end of 40 years, redeemable after 20 years at its option, and bearing interest at the rate of 4 per cent. per annum.   The Newport National Bank bid for all the bonds, and offered therefor $27,945. This offer the defendant accepted, and agreed to deliver the bonds to the bank, but thereafter refused to carry out its contract, and sold the bonds to other persons.   Thereupon the bank filed this suit for damages for the breach of the contract.   The circuit court sustained a general demurrer to the petition on the ground that a national bank has no power to make such a contract, and therefore was not bound by it.

A corporation can engage in no business not authorized by its charter.   Its powers are only such as are conferred by the statute, and an enumeration of its powers in the statute is an exclusion of all others.  Covington Gaslight

Co. v. City of Covington (22 R., 796) 58 S. W., 805, and cases cited. The powers of a national bank are derived from the act of Congress, and, so far as material to the question before us, are as follows: "To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security, and by obtaining, issuing and circulating notes according to the provisions of this title." Rev. St. U. S., section 5136 [Comp. St. U. S., 1901, p. 3455]. It will thus be seen that express power is conferred to carry on the business of banking by discounting and negotiating promissory notes, bills of exchange, and other evidences of debt. The board of education is a corporation created by the laws of this State, and its bonds are manifestly evidences of debt, and the transaction in question is therefore authorized by this provision of the national banking act, if the purchase of the bonds by the bank is warranted by the words "discounting and negotiating." It is urged that the bid of the bank, being for more than the face of the bonds, was not a discounting of the bonds within the fair meaning of that term. Without stopping to inquire whether this is true or not, we are satisfied it is warranted by the word "negotiating," which is a general word coming to us from the Latin, and signifying to carry on negotiations concerning and so to conduct business, to conclude a contract, or to transfer or arrange. The two expressions "discount and negotiate," taken together, have a broader meaning that the word "discount" alone, and seem to us to have been used designedly by Congress to authorize

these fiscal agencies to invest their surplus in promissory notes, bills of exchange, and other evidences of debt so as to make it remunerative. In Leach v. Hale, 31 Iowa, 69, 7 Am. Rep , 112, a national bank received United States bonds of one class on deposit under an agreement to exchange them for those of another class, and failed to make the exchange. It was held that the transaction was not *ultra vires*. The court said: "It is the policy of the government to encourage the purchase and sale of its bonds and to facilitate transactions in them, for thereby their value will be enhanced, and the credit of the government in a measure promoted. It is not probable that Congress intended to impose restrictions upon the national banks, the most numerous class of financial agents in the country, which would operate to prohibit dealing in the securities of the government in a manner usual among bankers and banking institutions. The effect of such legislation, it is apparent, would tend to discourage transactions in these securities, and in a measure operate to lessen their value." This case was followed by the court of appeals of New York in Yerkes v. Bank, 69 N. Y., 382, 25 Am. Rep., 208; and it has also been held that, as interest coupons attached to municipal bonds are evidences of debt in the nature of promissory notes, a national bank may deal in them. Bank v. Bennington, 16 Blatchf., 53, Fed. Cas. No. 4,807. Every reason which sustains the power of a national bank to deal in the bonds of the United States or interest-bearing coupons of municipal bonds applies with equal force to its purchase of corporate bonds, for one is precisely an evidence of debt just as the other, and the purchase of one is no less a negotiation than the purchase of the other. The same reasons of public policy, too, apply in one case as the other. A large part of the capital of the country

is invested in national banks, or controlled by them, and, if none of this capital could be applied to the purchase of municipal or corporate bonds, then the value of these securities would be greatly impaired, and much injustice will be done to the municipalities of the country. In Bank v. Boyd, 44 Md., 47, 22 Am. Rep., 35, a customer deposited with a national bank certain municipal coupon bonds as collateral security for a debt then existing. After the debt was paid off, the bonds were left with the bank on the idea that they should be a security for any future indebtedness. When such indebtedness did not exist, the bonds were stolen from the bank, and it relied upon the plea of *ultra vires* to defeat the responsibility for them. It was held responsible, and the power of the bank to take such bonds as collateral security for a debt was upheld. The power to hold municipal bonds as collateral security for a debt not created is no more fairly within the implied power to carry on a banking business than the power to buy such bonds outright. The case of Bank v. Pierson, 24 Minn., 140, 31 Am. Rep., 341, is not approved.

Judgment reversed, and cause remanded, with directions to overrule the demurrer to the petition.